## LIABILITY FOR INJURY AS BETWEEN PRINCIPAL AND INTERVENING CONTRACTOR.

[Circuit Court of Cuyahoga County.]

THE AMERICAN CONTRACTING CO. v. WALTER SAMMON ET AL.

Decided, February 9, 1905.

*Corporations—Use of Second Corporation as a Subterfuge—Liability as Between Principal and Intervening Contractor—Evidence—Conduct of Counsel in Argument to Jury—Excessive Verdict—Remittitur—Discretion of Court.*

1. Where the evidence supports an allegation of the petition to the effect that the company executing the contract was in fact a mere tool of another company which was the principal contractor, and both companies are joined as defendants in a suit for damages on account of an injury sustained during the progress of the work, the principal company can not escape liability by reason of the second company being an independent contractor, and evidence against the principal company is competent.

2. In such a case the second company against whom a verdict was returned, can not complain of the introduction of testimony the tendency of which was to place the responsibility for the accident upon the principal company.

3. The conduct of counsel for the plaintiff in his argument to the jury does not constitute prejudicial error, where it appears that what counsel said, taken in connection with what the court said to him in the presence of the jury, could not have prejudiced the jury in his favor, but was rather calculated to prejudice the jury against him.

4. Where it is not certain that the court would have sustained the motion for a new trial but for the remittitur which was allowed, the case on review comes within the rule that where the damages assessed are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court in the exercise of a sound discretion may make the remittitur of the excess the condition of refusing to grant a new trial.

MARVIN, J.; WINCH, J., and VOORHEES, J., concur.

Error to the court of common pleas.

Suit was brought in the court of common pleas by Walter Sammon against the King Bridge Company and the American Contracting Company, the petition alleging that the King

Bridge Company was an organization organized under the laws of the state of Ohio and engaged very extensively in structural iron work of various kinds and entirely responsible pecuniarily; that the defendant, the American Contracting Company, was a corporation in name only; that, although organized as a corporation under the laws of Ohio, it had a capital stock of but $500; that such company was "a mere formal device instigated, inflated and manipulated by said the King Bridge Company for the purpose of discreetly subletting to it by the King Bridge Company in form of words, occasional contracts, when in the opinion of said the King Bridge Company such subletting might be advisable, to avoid pecuniary responsibility to its employes for its negligent acts of omission and commission and for other like purposes:  *  *  *  being officered in form of words by the agents and servants of said the King Bridge Company, and is now and ever has been the creation in fact and mere tool of said the King Bridge Company, for the purposes above indicated, and for such purposes only."

The plaintiff further alleges in his petition that "at the time of the accident hereinafter mentioned he was unaware of the existing relations above stated between said defendants, and that though in form of words he was nominally in the employ of said the American Contracting Company, as he now learns, he avers and charges the fact to be, that he was actually doing the work and in the employ of said the King Bridge Company." Further, the petition alleges that on or about the 30th of November, 1901, the plaintiff, while so engaged in the nominal employment of the American Contracting Company, but in the actual employment of the King Bridge Company, he was required as a part of his duty to climb an iron column to a height of some forty feet above the surface of the ground, and that arriving so that his head was at the top of said column, for the purpose of raising himself he reached with his hand and grasped an iron plate, which should have been firmly bolted to said column, but which in fact was not so bolted, and by reason thereof it slipped from the top of the column and was precipitated with him to the ground, whereby he received great

injuries and for which he brought his suit. The petition alleges that the injuries which he sustained were caused wholly by the negligence of the defendants and were in no wise contributed to by any fault or negligence on his part.

At the close of the evidence on the part of the plaintiff the court, on motion of the King Bridge Company, arrested the evidence from the jury as to that defendant and entered a judgment in its favor and the case proceeded against the American Contracting Company, resulting in a verdict and judgment against said last named company, to reverse which the present proceedings is brought.

Objection was made at the trial on the part of the King Bridge Company to the introduction of any evidence against it under the petition. This objection was overruled and a proper exception taken. The only bearing that this ruling has to the case as it now stands here is as to whether evidence was not permitted against the bridge company which was prejudicial to the contracting company.

We think it clear that under the petition evidence was admissible as against the King Bridge Company.

It was urged in argument to us that the petition shows that the contracting company was a duly organized corporation and that the plaintiff was, nominally at least, in the employ of that corporation, but what has already been quoted from the petition shows that it was distinctly averred in the petition that the plaintiff was an employe of the bridge company and that the intervention of the contracting company was a mere subterfuge, and that it was organized as a creature of the bridge company, and the only purpose of its organization was that the bridge company might be relieved from pecuniary liability to any employe injured in performing the work which was really to be done by the bridge company, but which was nominally being done by the contracting company.

It is settled that one who contracts to have work done can not always be relieved from injuries received by an employe in some department of the work by having an independent contractor intervene between the principal contractor and the employe who receives the injury.

*In C. & C. B. Co.* v. *Steinbock & Patrick,* 61 O. S., 215, the first clause of the syllabus reads:

"Where danger to others is likely to attend the doing of certain work, unless care is observed, the person having it to do, is under a duty to see that it is done with reasonable care, and can not, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants."

And in the opinion in the same case, page 222, Judge Minshall uses this language:

"The doctrine of independent contractor, whereby one who lets work to be done by another, reserving no control over the performance of the work, is not liable to third persons for injuries resulting from the negligence of the contractor or his servants, is subject to several exceptions. One of these * * * is where the employer is, from the nature and character of the work, under a duty to others to see that it is carefully performed."

And this quotation is made with approval from Cockburn, C. J., in *Bower* v. *Peate,* 1 L. R. Q. B. Div., 321:

" 'A man who orders work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be averted, is bound to see to the doing of that which is necessary to prevent mischief,' " etc.

Again, on page 223, Judge Minshall says:

"The weight of reason and authority is to the effect that, where a party is under a duty to the public, or a third person, to see that work he is about to do, or have done, is carefully performed so as to avoid injury to others, he can not, by letting it to a contractor, avoid its liability, in case it is negligently done to the injury of another."

We think it clear that, if the allegations of the petition as to the relations between the bridge company and the contracting company had been sustained by the evidence the bridge company could not have escaped liability by reason of the contract-

ing company being an independent contractor, and so there was no error in allowing proper evidence to be introduced against the bridge company.

It is said, however, on the part of the plaintiff, in error that even if any evidence was admissible against the bridge company, certain evidence was permitted to go to the jury which was incompetent as against either company and which was prejudicial to the contracting company, though introduced primarily as against the bridge company.

The bill of exceptions does not purport to contain all of the evidence offered but only certain parts of such evidence upon rulings in regard to which complaint is made. The rulings upon evidence especially complained of are where the court permitted questions to be answered which were asked by counsel for plaintiff below and the purpose of which manifestly was to belittle and make insignificant the contracting company. A specimen of such is found beginning on page 4 of the bill of exceptions. The witness called by the plaintiff was Harley B. Gibbs, treasurer of the King Bridge Company, and the following questions and answers appear in the bill, the questions being asked by counsel for the plaintiff below:

"Q. The King Bridge Company is a company that has existed here a long time and has done an extensive business all over the United States?

"A. Since 1871.

"Q. And is reputed to be, and is, in fact, a great financial responsibility?

"A. Why, yes; none better that I know of.

"Q. The president, James A. King, is in bad health, is he not?

"A. Yes; he has been incapacitated for work for some time.

"Q. Who was the secretary of the King Bridge Company in 1901?

"A. Norman C. King. I don't remember in what year he was elected.

"Q. Is he a grandson, or a son?

"A. He is a grandson of Zenas King.

"Q. It is largely a King concern—was originally: It is capitalized for how much?"

To this last question objection was made, and the court overruled the objection, but before any answer was given the following question was asked:

"Q.  What is the capital stock of the company?"

To this, objection was made by the bridge company; it was overruled, and the answer is:

"A.  $600,000.00."

The court in ruling upon the admissibility of this evidence stated that the question of the financial responsibility of the bridge company had nothing to do with the recovery and that this was admitted solely with reference to the allegation of the petition as to the connection between the companies.  Whether it was admissible for any purpose it is not necessary to determine here.  It is certain that if any error was committed in the admission of this evidence it was not to the prejudice of the contracting company but only to the prejudice of the bridge company, against whom no judgment was recovered.

Again, on page 7, the question was asked by counsel for the plaintiff below:

"Q.  About how many employes in 1901 did the King Bridge Company have?

"A.  At the works?

"Q.  Yes, from bosses and contractors and so on; from top to bottom?"

This last question was objected to and the objection overruled.

"A.  We must have had four or five hundred."

Later on, in the examination of the same witness, this question was asked by counsel for plaintiff:

"Q.  I will inquire of you if you know about the financial size of the contract that the King Bridge Company made with this American Contracting Company, what it signified in dollars and cents?"

This was objected to, overruled and witness answered:

"A.  I can't tell without referring to the contract."

The contract was handed to the witness and the question continued and the witness was still unable to give the amount of the contract in dollars and cents.

Then this question was asked:

"Q. Didn't you know all the time that the American Contracting Company, as a financial institution, wasn't worth one cent?"

This was objected to, the objection overruled, and the witness answered:

"A. No, I didn't know that."

Then the counsel for plaintiff asked the witness if the contracting company had any offices and any materials or any devices for carrying on the work, etc., and finally this was asked:

"Q. Isn't this the truth about the matter, that that was not only for the purpose of avoiding detail" (the witness having said that one purpose for the letting to the contracting company was to avoid detail), "but it was for the purpose of getting the responsibility for poor fellows that happened to get hurt thrown off on a $500 corporation that wasn't worth anything, and to relieve yourself of it?"

Objection was made to this and overruled, and a good many other questions substantially of the same sort were asked and permitted to be answered, the purpose clearly being to impress upon the jury that the contracting company was an insignificant affair and really had no existence independent of the bridge company.

The plaintiff also called H. W. King, who was the vice-president of the bridge company and was president of the contracting company, and he was inquired of as to the contract made between the bridge company and the contracting company for the work on which the plaintiff below was engaged at the time of his injuries, and among other things, this was asked of him:

"Q. Isn't this the object and purpose of the organization of this company, not for the purpose of making dividends or making money, but simply to have another institution which may have a legal existence, so that in case an accident happens like this it shall be said the man was working for the contracting company and not for the King Bridge Company?"

Witness was permitted to answer, and did answer: "I think not." And then this question was asked:

"Q. Now, I will ask you again, if it is not the fact that was a mere contrivance—not intended to make money, never has made money, not organized by those who wanted to make money, but just as a mere convenience for the King Bridge Company?

Isn't that the whole of it, all of it, nothing else but it (speaking of the contracting company)?

"A. No."

If it be conceded that this evidence was not admissible as to the bridge company, though upon that we express no opinion, it seems clear that it could not have been to the prejudice of the contracting company. The tendency would seem to be, if the questions had been answered in the affirmative instead of the negative, rather to relieve the contracting company from responsibility and place it all upon the bridge company.

The testimony of but one witness offered by the defendant appears in the bill. The cross-examination of this witness is set out, from which it appears that every objection to questions asked of him in such cross-examination by counsel for the plaintiff was sustained by the court.

We hold that there was no erroneous ruling by the court upon the admission of evidence which was prejudicial to the contracting company.

Complaint is made, however, of the conduct of counsel for the plaintiff below in his argument to the jury. It appears that in the argument plaintiff's counsel spoke of the contracting company as a "scapegoat." Objection was made to this remark at the time, which was sustained by the court. The first remark made by counsel to which objection was not sustained, so far as is shown by the bill, is in these words: "We are here, then, dealing with the American Contracting Company. Am I justified in saying that the capital stock of the American Contracting Company is but $500?" An objection was made to this, and overruled. The statement was sustained by the facts, and, indeed, appears in the pleadings, but it, of course, was not a fact which could aid in any way in determining whether the plaintiff was entitled to a verdict and if so, what the amount of such verdict should be, but how it was calculated to prejudice the contracting company we are unable to see. Usually there is complaint where an effort is made to show that the defendant in a case like this is wealthy, as tending to enhance the verdict which may be rendered against it. How it could tend to enhance a verdict or to aid in obtaining a ver-

dict against the company to show that it had substantially no capital stock we are unable to see, and we think there was no prejudice to the contracting company in the remark made. Counsel then said:

"Am I justified in saying that the American Contracting Company appears to never have made a dollar?"

Objection was made to this and sustained, and the court said: "I wish to say now for the last time that I will not permit this kind of discussion in this case." Counsel then said: "If Your Honor please, I hardly know what to say." And the court said: "Anything you choose to say in this case which is proper—and you know what is proper—you may say without exception, but these matters have been taken out of the case and are not open to discussion." Counsel then said: "May I say this, then, that if it should chance in your judgment that a judgment should be rendered—in your opinion here sitting as jurors, that a judgment should be rendered in this case larger than the amount that this company is apparently able to pay—that you ought not, therefore, to be stingy about that judgment, but that you should give that judgment as you think just, and (turning to the court) is that right?" The court, we think very properly, answered: "Turning to the court with that inquiry and making that statement is not right, and I will not permit it. Address yourself to the jury, and go on with the case."

Counsel then said: "At the same time, I want to go on with the good offices and the kindness and the friendship of the court." To which the court answered, "You have the friendship of the court, but you must proceed in order."

Nothing more is shown by the bill as to the conduct of counsel in the argument of the case. We think the trial court pursued the proper course in the matter, and that nothing said by counsel for the plaintiff, taken in connection with what the court said to him in the presence of the jury, could have prejudiced the jury in his favor. We think it was rather calculated to prejudice the jury against him.

At the conclusion of the argument the court charged the jury. As shown by the bill, the charge was concluded at twenty min-

utes before twelve o'clock, the hour for the noon adjournment. The jury thereupon retired to the jury-room, reached a verdict and reported to the court about one o'clock, the conclusion of the noon adjournment, at which time the verdict of the jury was returned in favor of the plaintiff in the sum of $5,000.

A motion was made by the contracting company for a new trial, and upon the hearing of that motion the plaintiff remitted from the amount of the verdict the sum of $3,000, whereupon the motion was overruled and judgment was entered for the plaintiff for $2,000.

It is urged that the fact that the jury in so short a time rendered a verdict for an amount so much greater than the amount of the judgment entered by the court establishes that the verdict was obtained by the influence of passion or prejudice, and that, therefore, there was error on the part of the court in overruling the motion for a new trial, which was not cured by the remittur. The only evidence we have that the verdict was excessive is this remittur, because the evidence given to the jury is not all before us. It is not certain that the court would have sustained the motion for a new trial but for this remittur.

In the case of *The Pendleton Street Railroad Co.* v. *John Rahmann,* 22 O. S., 446, the syllabus reads:

"Where the damages assessed by a jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the *remittur* of the excess the condition of refusing to grant a new trial."

In the opinion, the court recites the causes for which, under the statute, a new trial shall be allowed, among which causes appear the following: "Excessive damages appearing to have been given under the influence of passion or prejudice." This is the exact language of our present statute (Section 5305).

In the case then under consideration the jury had returned a verdict for $10,000, and upon motion for a new trial the court entered the following order: "The court, being fully advised in the premises, overruled said motion on condition of the plaintiff remitting $5,000 on the amount of the verdict, and

the plaintiff consenting thereto, it is ordered and adjudged by the court that the plaintiff recover of the defendant his damages assessed at $5,000," etc.

The entry in the present case is in these words: "The motion of the American Contracting Company for a new trial of this cause is heard, whereupon the plaintiff remits from the amount of the verdict of the jury the sum of $3,000, and said motion is refused," etc.

It will be observed that in the case referred to the court made it a condition of the overruling of the motion that the plaintiff remit $5,000 from a verdict of $10,000. In the present case it does not appear from the language of the entry of the court that the remitting of $3,000 from the verdict was a condition of the overruling of the motion for a new trial, yet perhaps it is fair to assume that such was the case, and this would make the two cases almost exactly parallel. The remittur in the case referred to was for a larger amount than in the case before us; the percentage, however, was not so great, but practically the cases are alike, and in the opinion in the case in 22 O. S., *supra,* this language is used (page 450), and seems to be entirely applicable to the case at bar:

"The presence of the conditions, necessary to bring the case at bar clearly within the operation and peremptory rule of the statute, is not disclosed. The amount of the verdict is not such that the influence of passion or prejudice is inferable from its magnitude. It is not reducible from the facts spread upon the record. It is not shown by the finding of the court. We are not put in possession of any circumstances imposing the statutory obligation to vacate.

"It is probable, as is often the case, that in the opinion of the judge, who heard the case, the verdict is larger than he would have given as a juror, but not such as, in the absence of statutory infirmities, excluded his discretionary power to confirm or vacate it. We can not presume the existence of such infirmities, for it is not competent to *presume* a state of facts repugnant to the judgment of the court.

"So far as appears, then, the entering of a judgment upon a verdict for its entire amount, would not have been disturbed by this court. But, with the consent of the plaintiff, judgment was entered for a smaller sum. If this had been done arbitrarily, without his consent, it might have been ground of ex-

ception and reversal at his instance. But can the defendant object? The only consequence to him is the substitution of a less for a larger sum, which might have been legally exacted, and can not be held to prejudicially affect him.

"It may be supposed that a reasonable doubt existed in the mind of the court in regard to the vacation and awarding of a new trial. In the exercise of a sound discretion, with which courts are necssarily clothed, the question presented by the motion might have been determined either way, without constituting ground of exception. Wherefore, it results, that as confirmation of the entire verdict could not have been made available ground of error by the defendant, judgment for a part thereof instead of the whole, the residue being relinquished, can not.''

We reach the conclusion, therefore, that there is no error apparent upon the record in the action of the court in overruling the motion for a new trial, and no error in any of the proceedings of the court shown by the record which would justify a reversal of the judgment of the court of common pleas, and such judgment is affirmed.

*Kline, Tolles & Goff*, for plaintiff in error.

*Kerruish, Chapman & Kerruish*, for defendants in error.